H. D. Hazen, *Plaintiff in Error*, v. C. C. Cobb and James Vaughan, partners doing business as Cobb-Vaughan Motor Company, formerly doing business as Cobb Motor Company, *Defendants in Error*.

Division B.

Opinion filed July 10, 1928.

152

154

*H. F. Mohr*, Attorney for Plaintiff in Error;

*Dickinson & Dickinson*, Attorneys for Defendant in Error.

BROWN, J.—This is an action brought in both general and special assumpsit. The real object of the suit was to recover damages for breach of a special contract of employment, as we judge from what appears in the record and the briefs. That is, the salary and commissions appear to have been substantially paid up to the time of the discharge, but plaintiff claims a wrongful discharge long before the period fixed by his contract for employment had expired.

On account of adverse rulings on the pleadings and evidence, plaintiff below, plaintiff in error here, introduced practically not testimony and suffered an instructed verdict in favor of defendants, taking writ of error to the judgment and assigning as error such adverse rulings.

The original declaration contained as its first three counts the common counts, for account stated, for work done and materials furnished and for money had and received. The fourth count declared on a special contract of employment for one year, a copy of what was attached to the declaration and made a part thereof. It was a contract between the plaintiff and Hazen and Cobb Motor Company for one year from date, by which the plaintiff was employed as a motor truck and tractor salesman at a stated monthly salary and in addition thereto a certain commission on sales made. It contained this final clause: "If a party of first part should at any time deem party of the second part incapable of serving them in a profitable manner they can by paying up commissions to date declare this contract null and void." The declaration alleged that at the time the contract was made the defendants as partners were engaged in the automobile business under the name of Cobb Motor Company, that plaintiff thereupon entered into the employment of the defendants according to the contract and kept and performed his contract in every respect, but that on a date named, about four months later, "the defendants, without any provocation on the part of the plaintiff, did breach and break the said contract by discharging the plaintiff from their employment and forced the plaintiff to seek employment elsewhere, to the great damage and humiliation of the plaintiff, wherefore the plaintiff brings this his suit and claims $10,000.00 damages." A bill of particulars was attached.

The defendants demurred to the fourth count of the

declaration upon the grounds that the contract was unilateral, without binding force, and made the duration thereof, and the term of plaintiff's employment depend upon the will and discretion of the plaintiff. The Court sustained this demurrer, which ruling is assigned as error.

The contract is not unilateral, though it has been held that whereby the contract, one party agrees to employ another as long as his services are "satisfactory," but the contract does not stipulate that the employe shall serve for any particular length of time, such contract lacks mutuality as to the duration of the employment, and the employer may terminate at any time. 18 R. C. L. 512; Price v. Western Loan Co. 35 Utah, 379, 100 Pac. R. 677. See also S. F. & W. R. Co. v. Willett, 31 So. 246, 43 Fla. 311. However, where the contract of employment is for a definite term, if it provides that the services are to be performed to the *satisfaction of the employer*, it may be terminated by him at any time that he *in good faith* becomes dissatisfied with the service of the employe, though no real or substantial grounds for dissatisfaction exist. The employer is in such case the sole judge as to whether the services are satisfactory, and the courts will not substitute their judgment for his as to the reasonableness of the grounds of dissatisfaction. 18, R. C. L. 512; 39 C. J. 74; and cases cited; Allen v. Mutual Compress Co. 101 Ala. 574, 14 So. R. 362. But the general rule is that such dissatisfaction must be real and in good faith, not merely feigned, or capricious or mercenary. 18 R. C. L. 512; 39 C. J. 75. And it has been held that where the contract may be terminated "for any good reason," the sufficiency of a reason for discharge is open to judicial inquiry. 39 C. J. 76; Caldwell v. Klyce, 80 Wash. 141 Pac. 1042. A reservation of the right to discharge for reasons of the sufficiency of which the employer reserves the right to be the sole

judge, does not give the employer the right to terminate the contract without a reason or for a false reason. He must act in good faith. 39 C. J. 73 and cases cited.

The only ground stated in this contract which gave the employers the right to terminate it was that they should *"deem"* the employe "incapable of serving them in a profitable manner." This did not mean that they might at any time arbitrarily discharge him without reason. The intent of the language used manifestly is that if the employers should at any time conclude, upon any reasonable ground whatsoever, that the employe "was incapable of serving them in a profitable manner," they should have the right to terminate the contract, on "paying up commissions to date;" but the reason or reasons for their conclusions must have had some relation to the question of the employe's capacity to serve them in a profitable manner, and they must have acted in good faith. If this much appeared, the court, or jury would not attempt to substitute its judgment for that of the employer, as to the sufficiency of the reasons or grounds upon which they acted, even though erroneous. But if the action of the employers was devoid of any reasonable basis whatever, it would not only be insufficient to sustain the breach, but would tend to show bad faith.

So the stated grounds of the demurrer were not well founded. But it is suggested that the sustaining of the demurrer is not reversible error because said fourth count was bad for another reason, namely, that it did not sufficiently allege a breach of the contract in that it did not negative discharge on the ground permitted under the contract, and hence did not state a good cause of action; so that the trial court should not be put in error for sustaining the demurrer, especially in view of the fact that leave to amend was granted. See 31 Cyc. 358.

We recognize the general rule that a pleading need not

by its averments anticipate a defense thereto and negative or void it. 31 Cyc. 109, 39 C. J. 98. But it is also a general rule that pleadings must not be ambiguous or doubtful in meaning and when two different meanings present themselves, that construction will be adopted which is most unfavorable to the party pleading. In a word, the pleading is usually construed most strongly against the pleader. Andrew Stephens' Pldg., 382; Milligan v. Keyser, 52 Fla. 331, 42 So. 367; Livingston v. Anderson, 30 Fla. 117, 11 So. R. 270.

The essential facts constituting a breach of contract should be set forth in unequivocal terms, and with such sufficient certainty as will apprise the defendant in what particular he has failed to perform. Yet the same certainty is not required in assigning the breach of a contract as in setting forth its terms; all that is required is that the breach be substantially and with reasonable certainty set forth. At common law it is as a rule sufficient to assign a breach in the words of the contract either negatively or affirmatively as the case may require, or in words which are co-extensive with the import and effect of the contract. Inasmuch as a defendant must generally know in what respect he has or has not performed his contract, no great particularity ought to be required, especially where an enumeration of particulars would lead to great prolixity in pleading a breach. It is not necessary to use the precise terms of the agreement sued on; it is generally sufficient that the breach be assigned in words which contain the sense and substance or legal import of the language of the contract. But more particularity is required in assigning the breach where the matter rests peculiarly in the knowledge of the party pleading. 13 C. J. 732, 733.

The breach of contract assigned in the special count was that "the defendants, without any provocation on the part of the plaintiff, did breach and break the said contract by

discharging the plaintiff from their employment." As the contract expressly authorized defendants to discharge the plaintiff under certain circumstances, this assignment of breach was not sufficient. It was not co-extensive with the import and effect of the contract. *Non constat*, but that the discharge complained of may have been upon the ground permitted by the contract. So the special count was subject to demurrer on this score, and the trial court will not put in error for sustaining the demurrer, merely because this ground was omitted. This defect was met by the amended fourth count which alleged that the defendants, in disregard of their contract, and without any provocation on the part of the plaintiff, and without deeming the plaintiff incapable. of serving them in a profitable manner, and without paying up his commissions due him under said contract, did on a date named, discharge the plaintiff from their employment and sought to cancel and terminate their contract with plaintiff, "to the great damage and humiliation of plaintiff," etc.

A motion to strike the word "humiliation" from this amended fourth count was properly sustained. It is not generally recognized as an element of recoverable damages in such cases. 18 R. C. L. 525; 39 C. J. 111, 112; St. Louis and San Francisco Railway Company, 6 Ala. App. 434, 60 So. R. 530. But the court erred in sustaining the demurrer interposed thereto. It contained all of the essential elements of a count in special assumsit. 2. R. C. L. 765-6; 5 C. J. 1393 et seq.; Carson's Fla. Com. Law. Pldg., 51; Borden Lumber Co. v. So. Stl. Dry Dock Co., 88 Fla. 166, 101 So. R. 846. It also alleged the change in the name under which the defendant partners did business, after the contract was made, from Cobb Motor Company to Cobb-Vaughan Motor Company. This was sufficient to show that the parties sued were the same as those making the contract. As to the sufficiency *vel non* of the allegation as

to damages, demurer was not the proper way to test that. Demurrer tests the cause of action. There was not a total absence of claim for damages. Haines v. Coconut Grove Dev. Co., 63 Fla. 175, 59 So. R. 11 Cyc. 297. Losses that necessarily result in the usual course of things, from the breach of a contract, are presumed to have been within the contemplation of the parties, and may be recovered under a general allegation of damages without being separately pleaded. Atlantic, etc., R. Co. v. Thomas, 60 Fla. 412, 53 So. 510.

The exceptions to the first and second interrogatories propounded by plaintiff to defendants under Sec. 2734, Rev. Gen. Stats. of Florida, were not well taken. They merely sought to ascertain whether the defendants were doing business as partners under the name of Cobb Motor Company when the contract was made, and when it was that the name of the business was changed to Cobb-Vaughan Motor Company. This was not "fishing" for the defendants' case. These exceptions should not have been sustained.

There was not sufficient showing of materiality to the issues in the case of the evidence sought, to render erroneous the denial by the court of plaintiff's motion to require defendants to produce certain office records or reports, under Sec. 2733, Rev. Gen. Stats. Sec. 4405 Comp. Gen. Laws of Fla. of 1927. Nor was there any error in the refusal to permit plaintiff to read to the jury the special count which had gone out on demurrer.

The case went to trial upon the common counts, pleas of the general issue, and a special plea which may not have been proper in reply to the common counts but which was not demurred to. It set up that provision of the written contract above referred to, and alleged that plaintiff had been discharged because the defendants deemed that he was incapable of serving them in a profitable manner and ter-

minated the contract, having discharged all their obligations to plaintiff in full.

Before proving what services had been rendered to defendant's and for how long, plaintiff sought to introduce the express writter contract of employment. Defendants objected upon the grounds *inter alia* (1) than an express contract is not admissable in evidence under the common counts until the entire contract has been completed and the time for performance has expired and that this suit was begun prior to the expiration date of the contract; and (2) that the only purpose for which the contract could be admitted would be to ascertain the value of the services actually performed and for which payment had not been received. This objection was sustained. The first ground of objection was not good; the second will be considered later. Plaintiff's counsel then asked plaintiff several questions, each of which referred to the contract in some way, and objections thereto were sustained. The Court had suggested that plaintiff prove the services rendered and then he could offer the contract as evidence of the value of such services. But after the foregoing objections were sustained, plaintiff declined to proceed further with the testimony and suffered an instructed verdict in favor of the defendants. All these rulings of the Court are assigned as error.

The contention of plaintiff in the court below, and in this court, is, as we understand it, that inasmuch as assumpsit is in all cases an action founded upon contract, he could proceed in the same way and for the same extent of relief, for breach of the written contract, under the common counts as he could under a special count; and that the contract, being the foundation of the suit, should have been admitted at the beginning of the trial. This conten-

tion is based upon a misconception, not uncommon, of the action of general assumpsit.

There is no doubt about the proposition that the action of assumpsit lies for the recovery of damages for the breach or non performance of a simple contract, namely, a contract not under seal, whether oral or written, or upon a contract implied by law from the acts or conduct of the parties. 5 C. J. 1380 *et seq.;* Andrews Stephen's Pldg., 85, 86; 2 R. C. L. 742, 747; Borden Lumber Co. v. So. Atl. Dry Dock Co., 88 Fla. 166, 101 So. R. 846; a Enc. Pldg. and Prac. 988; Carson's Florida Common Law Pldg., 100, 111.

But there are two grand divisions of assumpsit actions: *general,* upon the common counts; and *special,* for the breach of an express contract, oral or written. In the latter class of cases, the contract must be declared upon specially, the common counts not being applicable. And yet in each class of actions the express contract, where there was one, may be introduced in evidence under certain conditions and for certain purposes. But these conditions and purposes differ with the class of the action, accordingly to whether it be general or special assumpsit. The mere fact that the express contract may usually be admitted in evidence at some stage of the trial in both classes of suits does not imply that the express contract is necessarily the basis of both. The truth is that in general assumpsit, on the common counts, only an *implied* contract is the basis of the action, while in special assumpsit an *express* contract is the only basis. And where the plaintiff founds his action on an express contract, special assumpsit is the only appropriate remedy, and frequently the only remedy by which he can obtain complete relief or any relief whatever. On the other hand, there are many cases where for technical invalidity or other reason the express contract cannot be relied upon as the foundation

of the action and the plaintiff can only obtain redress, and then sometimes in part only, by action in general assumpsit on the *implied* contract. So it has become quite customary, in an abundance of caution, to join the common counts with the special count which declares on the express contract, so that if for any reason the plaintiff fails in his proof of the express contract he may have an opportunity to at least recover the value of the work actually done or the materials actually furnished, or so much thereof as have not been paid for, upon an implied contract. And frequently in such cases the invalid or otherwise inadmissable express contract may be introduced in evidence on the question of the value of the services performed or the goods furnished. But it still remains highly important to good pleading and the efficient administration of justice that the distinction between general and special assumpsit be preserved.

General assumpsit is so called because there are general forms devised for stating the various causes of action most commonly arising, and hence these forms are called the common counts. See forms 1 to 6 in Sec. 2648 Rev. Gen. Stats., and Sec. 4314 Compiled General Laws of Florida of 1927. In Andrews Stephen's Pleading, pp. 86 and 87 it is well said:

"The names, however, do not express the real difference between general and special assumpsit. The difference in substance is this: That in *general assumpsit* the cause of action is *never* based upon an express contract no matter whether there was an express contract or not. The recovery is based upon the implied contract to pay. The contract will prevent the plaintiff from recovering beyond the contract price, but cannot be used by him to prevent the defendant from

proving mitigating facts under this count. * * *
Special *assumpsit* is the *only* appropriate remedy to
recover what is due upon or for the breach of an
express simple contract when the plaintiff grounds
his cause of action upon the contract. This form of
count differs from *general assumpsit* in this point: that
*special assumpsit* lies only upon an express contract
while *general assumpsit* never does. There is some con-
fusion in the books, and recent writers who copy them
seem to have followed the error; but the learned editors
of Smith's Leading Cases have stated the matter so
clearly, together with the authority, that there is but
little left but to give them the proper credit. They
say: 'The confusion and obscurity which exists in
the books in relation to this matter of *special* and
*general assumpsit* have arisen from an erroneous im-
pression that when there has been a special contract,
and the plaintiff brings *general assumpsit*, the special
contract of the defendant is in some degree or to some
extent the ground of the plaintiff's recovery. This
impression arises from an error as to the legal nature
of and ground of *general assumpsit*, which rests only
on a legal liability springing out of a consideration re-
ceived.' As a matter of course there are no common
counts for *special assumpsit*, and, as was said in the
introduction, there are no common counts except those
in general assumpsit.'' See also Bucker v. McKinnon,
37 Fla. 391, 20 So. R. 540; Stephens Lumber Co. v.
Cates, 62 Fla. 382, 56 So. R. 298; Yulee v. Canova, 11
Fla. 9.

It is a well settled rule that when an express simple
contract is open and unexecuted, and plaintiff proceeds
for a breach of it, he must declare specially. *General*

*assumpsit* will not lie. The law will not imply a contract where a valid express one exists. This rule is supported by the great weight of authority. 5 C. J. 1386 and cases cited. Lanier v. Chappell, 2 Fla. 621, 630; Sanderson v. Hagan, 6 Fla. 318, 324; 2 R. C. L. 761; 2 Enc. Pldg. and Prac., 990; Andrews Stephen's Pleadings, 59, 85, *et seq.*; C. and O. Canal Co. v. Knapp. (U. S.) 9 Peters 541, 9 Law Ed. 222; Chitty Pldg., 352.

But where an express contract has been fully performed on plaintiff's part, and nothing remains to be done under it but the payment of money by defendant, which is nothing more than the law would imply against him, plaintiff may declare specially upon the original contract, or generally on the common counts, at his election. And if he adopts the latter course, he may offer the contract in evidence to show that he has performed what was agreed to be done and to show the value of the services performed or the materials furnished. 5 C. J. 1386-7; 2 R. C. L. 726; Enc. Pldg. & Prac., 1009, 1 Chitty Pldg., 372; Lanier v. Chappell, *supra.*

Also, where a special contract has been partly performed by the plaintiff and has been put an end to by mutual consent of the parties, or by the act of the defendant, or by "act of God," or the contract for technical deficiencies in its execution is not legally enforcable, and the part performance of the contract was beneficial to the defendant and accepted by him, or full performance waived by him, the plaintiff may recover on the common counts for the actual value of the services rendered or materials furnished and thus accepted and enjoyed. And this rule would ordinarily hold good even if the plaintiff could not maintain an action upon the original contract. 5 C. J., 1388-9; 2 R. C. L. 761; Stephens Lumber Co. v. Cates, 62 Fla. 382, 56 So. R. 298; Tunno v. Roberts, 16 Fla. 738;

Buckie v. McKinnon, 37 Fla. 391, 20 So. R. 540. In such cases, evidence of the special contract may be admitted as tending to show the value of the services rendered or materials furnished. See authorities cited.

But if a party desires to recover damages for the breach of an executory contract, not for the value of the services actually performed or materials actually furnished by him thereunder prior to such breach, but for the compensation or profits he might have derived thereafter if the other party had permitted the full performance of the contract, his remedy is not in general assumpsit on the common counts, but he must declare specially on the contract and claim such damages as he is legally entitled to for the breach of same. See 39 C. J. 95, 97 and 5 C. J. 1386, and other authorities above cited; also Sullivan v. McMillan, 26 Fla. 543, 8 So. R. 450.

Thus, in the matter of a contract for personal services we have held that a cause of action for an entire breach of the contract immediately arises upon the wrongful discharge of an employe under a contract for a definite time, and it is not necessary to await the termination of that period before asking the courts for redress. Harris v. Coconut Grove Dev. Co. 63 Fla. 175, 59 So. R. 11. See also 39 C. J. 95; 18 R. C. L. 524.

The measure of damages recoverable in such a case is, *prima facie,* the contract price or wages for the unexpired part of the term; including of course any unpaid balance due under the contract at the time of discharge for services already performed. 39 C. J. 102; 18 R. C. L. 523. We are not called upon on this record to consider what may be shown in mitigation of damages. 18 R. C. L. 527, *et seq.*; 39 C. J. 100, 101, 108-118.

Under the status of the pleadings at the trial, the court was without error in holding that the plaintiff could

not, under his common counts, introduce evidence of the special contract before he had proven what services, if any, he had rendered defendants.

But on account of the error in sustaining the demurrer to the amended fourth count and errors in other rulings, above pointed out, the judgment must be reversed.

Reversed.

ELLIS, C. J., AND STRUM, J., concur.

WHITFIELD, P. J., AND TERRELL AND BUFORD, J. J., concur in the opinion and judgment.