**McKESSON & ROBBINS, Inc., v. CHARSKY.**

No. 10657.

District Court, D. Colorado.

May 18, 1936.

Grant, Ellis, Shafroth & Toll, Morrison Shafroth, Erl H. Ellis, and Deirdre Dunlevy, all of Denver, Colo., for plaintiff.

Ira C. Rothgerber and Walter M. Appel, both of Denver, Colo., for defendant.

SYMES, District Judge.

By motion to dismiss the bill defendant raises the question whether an action under section 21, Colorado Code of Civil Procedure, providing that an action may be brought by one person against another for the purpose of determining a claim which the latter makes against the former for money or property upon an alleged liability, can be maintained in the federal court, assuming diversity of citizenship and the jurisdictional amount. The plaintiff, a Maryland corporation engaged in the drug and liquor business in Denver and elsewhere, employed the defendant in 1929 to conduct and manage its drug business in Colorado. The employment was later extended by agreement to September 1, 1939, but on August 1, 1935, plaintiff alleges it discharged the defendant because of misconduct and mismanagement. It then alleges that the defendant is making claims and demands against the plaintiff for money and damages in excess of $3,000 arising out of his discharge as aforesaid.

Clearly the action is maintainable in the state court under section 21 without resort to the Declaratory Judgment Act, Laws Colo.1923, p. 268 (section 260 et seq., Courtright's Mills Annotated Code 1933); Owenbey v. Silverstein, 69 Colo. 325, 194 P. 607.

Defendant cites Willing v. Chicago Auditorium Ass'n, 277 U.S. 274, 48 S.Ct. 507, 72 L.Ed. 880, Massachusetts v. Mellon, 262 U.S. 447, 43 S.Ct. 597, 67 L.Ed. 1078, and New Jersey v. Sargent, 269 U. S. 328, 46 S.Ct. 122, 70 L.Ed. 289, and other cases. The Auditorium Case, supra, holds that relief by declaratory judgment was beyond the jurisdiction of the federal judiciary, as defined by article 3, section 2, clause 1, of the Federal Constitution. The case is not in point on the facts. The Auditorium Association had built a building on ground leased for a long term. The question was:. Had it the right under the lease to tear down the improvement and substitute a larger and more modern building in its place? Fearing that under the terms of the lease it could not remove the existing structure without the lessor's consent, it brought suit against the latter and its bondholders for the purpose of establishing its right so to do. The court held the suit was not a "case" or "controversy" within the clause of the Federal Constitution referred to; that the action arose merely because the plaintiff had doubts of its rights under the contract. It was careful to point out that the bill alleged that the plaintiff in its own opinion had the right to do what it wanted under the lease, and that there was no suggestion in the bill or the record that the landlord had wronged or threatened to wrong the plaintiff, or that there was anything more than a mere refusal of the landlord to agree with the tenant as to the meaning of the lease. Contrast this with the case at bar, wherein the plaintiff has made an issue by discharging the defendant three years before the time provided for in the contract.

Massachusetts v. Mellon, supra, presents an entirely different question, the court holding that a suit by a federal taxpayer to enjoin the execution of a federal appropriation act (Act Nov. 23, 1921, 42 Stat. 224 [42 U.S.C.A. § 161 et seq.]),

210

on the ground that it is invalid does not lie in the federal court.

Likewise in New Jersey v. Sargent, supra, the state of New Jersey sought to enjoin officials of the federal government from enforcing the Federal Water Power Act (16 U.S.C.A. § 791 et seq.) on the ground it was unconstitutional. The court dismissed the bill because no threatened harm was disclosed, and that all that was sought was a judicial declaration as to the constitutionality of the act.

The plaintiff here points out that the discharge of the defendant is an accomplished fact, a definite breach of the agreement, and cites the often quoted decision of Mr. Justice Swayne in Davis v. Gray, 16 Wall. 203, 221, 21 L.Ed. 447, that "A party by going into a National court does not lose any right or appropriate remedy of which he might have availed himself in the State courts of the same locality. The wise policy of the Constitution gives him a choice of tribunals." And statements to the same effect in Kieley v. McGlynn, 21 Wall. 503, 22 L.Ed. 599, Smith v. Ft. Scott, H. & W. R. Co., 99 U.S. 398, 25 L.Ed. 437, and Cowley v. Northern P. R. Co., 159 U.S. 569, 16 S.Ct. 127, 40 L.Ed. 263, and finally Dawson v. Kentucky Distilleries & Warehouse Co., 255 U.S. 288, 41 S.Ct. 272, 275, 65 L.Ed. 638, where the court said: "And if the equitable remedy was available in the state courts it was not lost by suing in the federal court."

It is true that Davis v. Gray, 16 Wall. 203, 21 L.Ed. 447, supra, has been limited in Pusey & Jones Co. v. Hanssen, 261 U. S. 491, 498, 43 S.Ct. 454, 456, 67 L.Ed. 763, and note 3. The court said, 261 U. S. 491, at pages 497, 498, 43 S.Ct. 454, 456, 67 L.Ed. 763, that a remedial right to proceed in a federal court sitting in equity cannot be enlarged by a state statute, and the federal court may therefore be obliged to deny an equitable remedy which the plaintiff might have secured in the state court; but if, however, the state statute confers a substantive equitable right, as distinguished from a mere enlargement of the equitable jurisdiction or remedy, such a substantive right could be enforced in the federal court; and if the Legislature of the state in which the court sits confers a substantive right, parties are entitled to the aid of the federal court for its enforcement. See, also, Carson v. Long-Bell Lumber Corporation (C.C.A.) 73 F.(2d) 397, at page 404. In Clark v. Smith, 13

Pet. 195, 203, 10 L.Ed. 123, the court said: "The state legislatures * * * having created a right, and at the same time prescribed the remedy to enforce it, if the remedy prescribed is substantially consistent with the ordinary modes of proceeding on the chancery side of the federal courts, no reason exists why it should not be pursued in the same form as it is in the state courts."

In Grover v. Merritt Development Co. (D.C.) 7 F.(2d) 917, at page 919, Judge Cant cites a long list of authorities to the proposition that with few exceptions the federal courts, when their jurisdiction is properly invoked, enforce state laws precisely as do the state courts under similar circumstances. That for the time being and for the particular case in hand they function as if sitting in the place of the local court.

"This is the true theory of the Constitution and of the federal laws. The aim of the government is to provide impartial tribunals to which certain classes of litigants may with confidence resort. * * * They are not to lose any rights by going into a federal court. If they have rights, whether founded on state laws or otherwise, those rights are to be protected and enforced in the court of their choice."

See, also, Alliance Trust Co. v. Hall (D.C.) 11 F.Supp. 668, and Hughes Federal Practice, vol. 2, § 945.

 Let us examine section 21 referred to. Clearly it creates a right of action out of a state of facts not theretofore cognizable in the courts of the state, as distinguished from a mere enlargement or the creation of a new remedy for the enforcement of a right of action already existing. It is analogous to a bill of peace, and is not dissimilar in principle to the procedure for the perpetuation of testimony authorized under some codes. It permits a party to have determined now, while the evidence is available, a dispute that otherwise would hang over him for an indefinite time, or until the other party chose to start suit.

The policy of the law is to discourage litigation by refusing moot cases. Such was the Auditorium Case, supra. It encourages the prompt settlement of actual disputes, however, where for instance, as in the case at bar, the plaintiff has gone a step further by discharging the defendant, notwithstanding its agreement to employ him until 1939. According to the

pleadings—which for the purpose of the motion we assume to be true—something is affirmed upon the one side and denied upon the other. This amounts to a controversy, unless we take the position that defendant logically must, that a controversy does not exist until a suit is filed. It meets the test of Gabriel v. Board of Regents, 83 Colo. 582, 583, 267 P. 407, that the court will not construe a contract until the validity of its terms is in dispute, and unlike the situation presented in Florence Sewing Mach. Co. v. Singer Mfg. Co., Fed.Cas.No.4,884, 8 Blatchf. 113, the plaintiff here has gone too far to avoid the consequences, if it has misconstrued the contract.

The motion is overruled, and defendant may have ten days to answer or elect to stand on the motion.