547 P.2d 260 (1975)
Roberta L. ANDERSON, Plaintiff-Appellee,
v.
Orville A. KENELLY, Defendant-Appellant.
No. 75-280.
Colorado Court of Appeals, Div. I.
December 18, 1975.
Rehearing Denied January 15, 1976.
Certiorari Denied March 22, 1976.
Robert Dunlap, Colorado Springs, for plaintiff-appellee.
Yegge, Hall & Evans, Raymond J. Connell, Denver, for defendant-appellant.
Selected for Official Publication.
STERNBERG, Judge.
Plaintiff, a widow, was successful in her action below against defendant, her former attorney, in a suit to set aside a one-third contingent fee contract. The issues on appeal are whether a contingent fee contract is subject to the scrutiny of a court, and if so, whether, under the facts of this case, the court properly concluded that the contract was unconscionable. We conclude that under its general supervisory powers over attorneys as officers of the court, a court may scrutinize a contingent fee contract, and that the court's findings of fact which led it to nullify this contract are amply supported by the evidence. Hence, we affirm the judgment.
The relevant facts are these: Plaintiff's husband was insured under his employer's group life insurance policy which afforded coverage for accidental death. The policy contained a clause which provided that coverage would continue for a period of 31 days after termination of employment or enlistment in the military service, whichever first occurs.
On June 22, 1971, plaintiff's husband enlisted in the Air Force, and on July 22, 1971, 30 days later, he was killed in an automobile accident. Plaintiff recalled the date of enlistment as having been on June *261 20, 1971, 32 days prior to the date of her husband's death. The widow sought the assistance of the judge advocate's office to attempt to collect the proceeds of the subject insurance policy, as well as two other policies on his life. Basing its conclusion on the erroneous date of enlistment, it advised plaintiff that it could not collect the death benefits and that a civilian attorney should be retained. The widow then sought the help of the defendant-attorney.
At the time of their initial discussion, the parties assumed the date of enlistment to have been June 20, 1971, beyond the 31 day extended coverage term of the policy. Defendant testified that he gave her the option of either a one-third contingent fee contract or a rate of $30 an hour for his time. She denied that the hourly rate was ever mentioned to her.
After discussing the matter with others, the widow told the attorney to proceed on a contingent fee basis. The attorney then proceeded to negotiate with the insurance company and immediately discovered the correct date of enlistment. One week after being furnished with the correct date of enlistment, the company paid to the attorney the sum of $26,373, the amount due under the policy, of which he retained for himself one-third or $8,791.08. This suit followed.
The trial court determined that, because of insufficient information available to him, the attorney could not offer plaintiff a viable alternative to the contingent fee contract. And it found that:
"[T]here is no reasonable relationship between the fee charged and the work performed by defendant and, therefore, the fee is unconscionable, unreasonable, and unfair . . .. Caveat emptor is not a legal maxim attributable to the attorney-client relationship."
Under its general supervisory power over attorneys as officers of the court, a court may and should scrutinize contingent fee contracts and determine the reasonableness of the terms thereof. Brillhart v. Hudson, 169 Colo. 329, 455 P.2d 878; Bryant v. Hand, 158 Colo. 56, 404 P.2d 521; Enyart v. Orr, 78 Colo. 6, 238 P. 29.
Here, the "dispute" over payment of the insurance proceeds was caused by confusion concerning the date of the husband's enlistment. Little skill or effort was required to obtain the correct information. Had the parties been aware of the correct date of enlistment, it is unlikely that the contingent fee contract would even have been considered, much less agreed to. When this error became apparent to the attorney, and he saw that the express language of the insurance policy mandated payment, and when such payment was immediately forthcoming, his proper course of action would have been to reduce his fee. Faced with his failure so to do, the trial court properly reviewed this contract and determined from the evidence that it was "unconscionable, unreasonable, and unfair," and reduced the fee. See Fracasse v. Brent, 6 Cal.3rd 784, 100 Cal. Rptr. 385, 494 P.2d 9.
Defendant argues at length that if we uphold the action of the trial court, we are sounding the death-knell of contingent fee arrangements between attorneys and clients. We disagree. While the uninformed frequently cast aspersions on contingent fee contracts, nevertheless, such fee arrangements are frequently the only way in which people of modest means may secure legal representation in certain types of litigation. Often it is the best fee arrangement for any litigant where recovery is truly in doubt. See Code of Professional Responsibility EC2-20. Rather than destroying the contingent fee contract, curtailing abuses thereof, as the trial court did here, will serve to answer critics and will help assure its continued use in proper cases to the benefit of litigants, the bar, and the ends of justice.
Judgment affirmed.
COYTE and SMITH, JJ., concur.